J-S20015-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON ANDREW STAUB | : | |
| | : | |
| Appellant | : | No. 1529 MDA 2023 |

Appeal from the Judgment of Sentence Entered October 16, 2023
In the Court of Common Pleas of Adams County Criminal Division at
No(s): CP-01-CR-0001047-2022

BEFORE:   OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED: JUNE 28, 2024**

Appellant, Jason Andrew Staub, appeals from the judgment of sentence entered on October 16, 2023.  We affirm.

The trial court ably summarized the underlying facts of this case:

On June 30, 2022, Appellant was charged with solicitation of rape of a child[fn.1] by the Pennsylvania State Police.  The basis of this charge was a series of conversations between Appellant and his former romantic partner, [R.A.].  One such conversation included Appellant expressing to [R.A.] his desire to see she and their three-year-old son engaged in sexual intercourse.  Based on her concern with Appellant's comments, [R.A.] called Appellant back and recorded the conversation to collect evidence of Appellant's criminal intent.  As a result of [R.A.'s] report and the recorded phone conversation later given to the police, Appellant was charged with solicitation of rape of a child.

[fn.1] 18 Pa.C.S.A. § 902(a); 18 Pa.C.S.A. § 3121(c).

_____

[*] Former Justice specially assigned to the Superior Court.

. . .

[A bench trial] was held on June 30, 2023. It was revealed at trial that Appellant had been in contact with [R.A.] after a recent custody matter. Appellant had called [R.A.] and, during their conversation, requested that [R.A.] and their three-year-old son engage in sexual intercourse. According to testimony presented at trial, [R.A.] never prompted Appellant to speak about this expressed request. When [R.A.] was asked at trial if "[Appellant] mentioned he wanted a picture of your child's penis touching . . . [your] vagina," she responded in the affirmative and testified further that she felt Appellant was serious and not joking in making this request. [R.A.] also said that she had been so disturbed by Appellant's comments she ended the phone conversation. . . .

[R.A.] called Appellant a short time later and recorded this conversation with Appellant. She provided this recorded phone conversation to the Pennsylvania State Police, who filed criminal charges in this matter. The recording was also admitted as evidence and considered by the [trial] court.

A review of the recording revealed the following exchange occurred between [R.A.] and Appellant:

Appellant: "You know I hate it because I'm being selfish, but I didn't, I really didn't want a picture of it, like I wanted to be there and do it."

[R.A.]: "You know how small, how small it is."

Appellant: "I know."

Appellant: "I was gonna like get you to like, put your ankles behind your head, get your ankles out of the way, and like, you know what I mean, you know obviously I know it ain't gonna go far."

Appellant: "I know it's fucked up but like he's ours so if I'm gonna share you that's who I want to share you with."

[R.A.]: "Did you ever like ... with [your daughter]."

- 2 -

Appellant: "No, but I would."

[Following the bench trial, the trial court] found Appellant guilty of [criminal solicitation of rape of a child]. On October 16, 2023, Appellant was sentenced to serve a term in total confinement of no less than 84 months, nor more than 168 months at a state correctional institution.

Trial Court Opinion, 12/27/23, at 1-4 (some footnotes omitted).

Appellant filed a timely notice of appeal. He raises four claims to this Court:

1. Did the trial court err in finding that the Commonwealth has met their burden of proof finding [Appellant] guilty of criminal solicitation of rape in violation of section 902(a) where insufficient evidence was presented to satisfy the elements of said statute showing that [Appellant] commanded, encouraged or requested another person to commit rape and did so with the intent of promoting or facilitating the rape?

2. Did the trial court err in dismissing [Appellant's] habeas corpus petition when he ruled that [Appellant's] verbal comments, that were the sole basis of the charge for solicitation to rape, were not Constitutionally protected speech?

3. Did the trial court err in dismissing [Appellant's] omnibus pretrial motion regarding the suppression of the first recorded phone call which was the basis of the charge of solicitation of rape when he stated the recording was authorized under 18 Pa.C.S.A. section 5704(17) even though there was no evidence that [Appellant] was in the process of committing a crime, or about to commit a crime, or had committed a crime of violence?

4. Did the trial court err in dismissing [Appellant's] motion to dismiss for prosecutorial misconduct in an order that is unclear in that it addresses issues not raised in the motion and the reasons for the trial court's ruling are vague or not discernable from the record?

Appellant's Brief at 6-7 (some capitalization omitted).

We have reviewed the briefs of the parties, the relevant law, the certified record, and the opinion of the able trial court judge, the Honorable Shawn C. Wagner. We conclude that Appellant is not entitled to relief in this case, for the reasons expressed in Judge Wagner's December 27, 2023 opinion. Therefore, we affirm on the basis of Judge Wagner's opinion and adopt it as our own. In any future filing with this or any other court addressing this ruling, the filing party shall attach a copy of Judge Wagner's December 27, 2023 opinion, with the names of the victims redacted.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/28/2024

# IN THE COURT OF COMMON PLEAS OF ADAMS COUNTY, PENNSYLVANIA
## CRIMINAL

COMMONWEALTH OF PENNSYLVANIA        CP-01-CR-1047-2022

VS.

JASON ANDREW STAUB

### OPINION PURSUANT TO 1925(b)

Jason Andrew Staub (hereinafter "Appellant"), appeals the Court's Orders dismissing Appellant's Habeas Corpus Petition dated January 10, 2023, Omnibus Motion for Special Relief dated February 9, 2023, Motion to Dismiss for Prosecutorial Misconduct dated May 16, 2023, and ultimately, the Court's decision after Non-Jury Trial, finding Appellant guilty of Solicitation of Rape of a Child, entered June 30, 2023. For the reasons set forth herein, it is respectfully requested that Appellant's conviction and sentence be affirmed.

On June 30, 2022, Appellant was charged with solicitation of rape of a child[1] by the Pennsylvania State Police. The basis of this charge was a series of conversations between Appellant and his former romantic partner, R.A. . One such conversation included Appellant expressing to R.A. his desire to see she and their three-year-old son engaged in sexual intercourse.[2] Based on her concern with Appellant's comments, 'R.A. called Appellant back and recorded the conversation to collect evidence of Appellant's criminal intent. As a result of R.A.'s report and the recorded phone conversation later given to the police, Appellant was charged with solicitation of rape of a child.

---

[1] 18 Pa.C.S. § 902(a); 18 Pa.C.S. § 3121(c).
[2] N.T. Non-Jury Trial, 6/30/2023, at 7–9.

1

On October 20, 2022, Appellant filed an Omnibus Pretrial Motion including Habeas Corpus Petition. The primary contention set forth in the Motion was that Appellant's request to R.A. involving their infant son was constitutionally protected free speech, and also that R.A. recorded the phone conversation in violation of the Pennsylvania Wiretap Act. On January 10, 2023, Appellant's Omnibus Pretrial Motion, including Habeas Corpus was denied.[3] Appellant's Motion for Special Relief, reasserting that the any phone recording was made in violation of the Pennsylvania Wiretap Act, was denied on February 9, 2023.[4]

On February 10, 2023, Appellant filed a Motion to Dismiss for Prosecutorial Misconduct, as there had been an additional consensual telephone call recording which had not been provided to Appellant's counsel by the assigned prosecutor. On May 16, 2023, the Court conducted a hearing on Appellant's Motion to Dismiss for Prosecutorial Misconduct, and the Court determined that no such intentional misconduct or intentional withholding of evidence had occurred. The Court denied the Motion to Dismiss upon hearing credible testimony from the assigned prosecutor.[5] The Court did grant a continuance of the Non-Jury Trial to allow Appellant's counsel time to review the recently turned-over recording before trial. Importantly, the Court noted that the appropriate remedy according to Pa.R.Crim.P. 573 governing Pretrial Discovery would not have been dismissal of criminal charges.

---

[3] Order of Court, 1/10/2023
[4] Order of Court, 2/9/2023.
[5] Order of Court, 5/16/2023.

2

Non-Jury Trial was held on June 30, 2023.[6] It was revealed at trial that Appellant had been in contact with R.A. after a recent custody matter.[7] Appellant had called R.A. and, during their conversation, requested that R.A. and their three-year-old son engage in sexual intercourse. According to testimony presented at trial, R.A. never prompted Appellant to speak about this expressed request.[8] When R.A. was asked at trial if "the Defendant mentioned he wanted a picture of your child's penis touching. . . [your] vagina,"[9] she responded in the affirmative and testified further that she felt Appellant was serious and not joking in making this request.[10] R.A. also said that she had been so disturbed by Appellant's comments she ended the phone conversation. R.A. called Appellant a short time later and recorded this conversation with Appellant. She provided this recorded phone conversation to the Pennsylvania State Police, who filed criminal charges in this matter. The recording was also admitted as evidence and considered by the Court.

A review of the recording revealed the following exchange occurred between R.A. and Appellant:

Appellant: "You know I hate it because I'm being selfish, but I didn't, I really didn't want a picture of it, like I wanted to be there and do it."

R.A.: "You know how small, how small it is."

Appellant: "I know."

Appellant: "I was gonna like get you to like, put your ankles behind your head, get

---

[6] Id.
[7] Id.
[8] See id. at 7–9
[9] Id. at 7–8.
[10] Id.

3

your ankles out of the way, and like, you know what I mean, you know obviously I know it ain't gonna go far."

Appellant: "I know it's fucked up but like he's ours so if I'm gonna share you that's who I want to share you with."

R.P.      : "Did you ever like. . . with E    ."[11]

Appellant: "No, but I would."

Following Non-Jury Trial, the Court found Appellant guilty of Count 1, criminal solicitation of rape of a child.[12] On October 16, 2023, Appellant was sentenced to serve a term in total confinement of no less than 84 months, nor more than 168 months at a state correctional institution.[13]

On November 3, 2023, Appellant timely filed a Notice of Appeal. On November 16, 2023, Appellant filed a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. § 1925(b). Those issues are reproduced for our review, verbatim, as follows:

1. Did the Trial Court err in dismissing Defendant's Habeas Corpus Petition when he ruled that Defendant's verbal comments, that were the sole basis of the charge for solicitation of rape, were not Constitutionally protected speech?

2. Did the Trial Court err in dismissing Defendant's Omnibus Pretrial Motion regarding the suppression of the first recorded phone call which was the basis of the charge of solicitation of rape when he stated the recording was authorized under 18 Pa.C.S.A. section 5704(17) even though there was no evidence that the Defendant

---

[11] "E    " is Appellant's daughter. R.A.      was not E  s biological mother. E   is age two or three now. N.T. Non-Jury Trial, 6/30/2023, at 33.
[12] 18 Pa.C.S. § 902(a).
[13] Order of Court, 10/16/2023.

was in the process of committing a crime, or about to commit a crime, or had committed a crime of violence?

3. Did the Trial Court err in dismissing Defendant's Motion to Dismiss for Prosecutorial Misconduct in an Order that is unclear in that it addresses issues not raised in the Motion and the reasons for the Trial Court's ruling are vague or not discernable from the record?

4. Did the Trial Court err in finding that the Commonwealth has met their burden of proof finding the Defendant guilty of criminal solicitation of rape of a child in violation of section 902(a) where insufficient evidence was presented to satisfy the elements of said statute showing that the Defendant commanded, encouraged or requested another person to commit rape and did so with the intent of promoting or facilitating the rape?

## LEGAL STANDARD

Pennsylvania law is clear that "once a defendant has gone to trial and been found guilty of a crime, any defect in the preliminary hearing is rendered immaterial." **Commonwealth v. Worrall**, 609 A.2d 851 (Pa. Super 1992) (citation omitted). As set forth in **Commonwealth v. Lyons**:

> [T]he case was tried and the evidence was submitted to the court which, as trier of the facts, found not only that the Commonwealth had established a prima facie case of guilt but that Appellant's guilt had been proved beyond a reasonable doubt. Any deficiency in the preliminary hearing procedure, therefore, was harmless.

**Commonwealth v. Lyons**, 568 A.2d 1266 (Pa. Super. 1988) (citations omitted); see also **Commonwealth v. McCullough**, 461 A.2d 1229, 1231 (Pa. 1983) (holding that failure to establish a prima facie case at the preliminary hearing was immaterial where a jury ultimately found the defendant guilty beyond a reasonable doubt at trial).

5

There are few types of speech that are considered entirely unprotected by the First Amendment to the Federal Constitution. The landmark United States Supreme Court decision in **Brandenburg v. Ohio** carves out one such area of unprotected speech—that speech that is likely to incite or produce imminent lawless action. See **Brandenburg v. Ohio**, 395 U.S. 444, 447 (1969). The Supreme Court has further expanded on **Brandenburg** in declaring that criminal actions that can only be committed or achieved in the form of speech are not protected by the First Amendment or **Brandenburg** sheerly because they are committed in the form of speech. **Packingham v. North Carolina**, 582 U.S. 98 (2017) (interpreting **Brandenburg**, 395 U.S. at 447–49 (1969)). Indeed, the First Amendment will not protect "a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor or using a website to gather information about a minor." **Id.**

One commits the crime of rape of a child "when the person engages in sexual intercourse with a complainant who is less than 13 years of age." **18 Pa.C.S. § 3121(c)**. One commits the offense of criminal solicitation if, "with the intent of promoting or facilitating its commission, he commands, encourages or requests another person to engage in specific conduct which would constitute such crime or an attempt to commit such crime. ..." **18 Pa.C.S. § 902(a)**.

Pennsylvania generally bans the taping of conversations unless all parties consent. **18 Pa.C.S. § 5704(4)**. However, the Pennsylvania Wiretap Act explicitly authorizes:

> [a]ny victim, witness, or private detective. . . .to intercept contents of any wire, electronic or oral communication, if that person is under a reasonable suspicion that the intercepted party is committing, about to commit, or has committed a crime of violence and there is reason to believe that evidence of the crime of violence may be obtained from the interception.

18 Pa.C.S. § 5704(17). Section 5702 defines crimes of violence in this context to include, among others, "rape as defined in section 3121(a), (c), or (d). . ." as well as "criminal solicitation as defined in section 902(a). . ." **18 Pa.C.S. § 5702(1)(ii), (v).**

The standard of review on a sufficiency of the evidence claim is "whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict[-]winner, are sufficient to establish all elements of the offense beyond a reasonable doubt." **Commonwealth v. Jones,** 904 A.2d 24, 26 (Pa. Super. 2006) (citation omitted) (internal quotations omitted). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." **Commonwealth v. Hartzell,** 988 A.2d 141, 143 (Pa. Super. 2009) (internal quotations omitted). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law, no probability of fact may be drawn from the combined circumstances. . . ." **Id.** "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.'" **Commonwealth v. Bowen,** 55 A.3d 1254, 1260 (Pa. Super. 2012) (quoting **Commonwealth v. Muniz,** 5 A.3d 345, 348 (Pa. Super. 2010)). "Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." **Id.** "In applying the above test, [the appellate court] may not weigh the evidence and substitute our judgment for the fact-finder." **Commonwealth v. McClendon,** 874 A.2d 1223, 1228–29 (Pa. Super. 2005) (quotations omitted).

## DISCUSSION

Appellant first challenges the Court's dismissal of his Pretrial Habeas Corpus Petition upon determining that Appellant's comments were not speech protected by the First Amendment. As a threshold matter, it is well-settled law that any deficiency in a preliminary hearing will be immaterial if the Appellant's guilt is later determined at trial and proven beyond a reasonable doubt. See **Lyons**, 568 A.2d at 1268. Indeed, "when a defendant has been proven guilty beyond a reasonable doubt in a trial completed without reversible error, it would be inappropriate as well as foolish to require a new preliminary hearing or trial." **Commonwealth v. Worrall**, 609 A.2d 851, 852 (Pa. Super. 1992). In the instant case, Appellant's case proceeded to Non-Jury Trial, held on June 30, 2023, at which time Appellant was found guilty. Appellant has been found guilty beyond a reasonable doubt at trial, therefore any defect in pretrial matters is immaterial and does not warrant relief. **Id.**; see **Jacobs**, 640 A.2d at 1330.

Assuming the issue were appropriately raised, Appellant mistakenly relies on the landmark First Amendment case **Brandenburg v. Ohio**, which established that advocacy of a violation of the law is protected speech so long as that speech is not directed to incite or produce imminent lawless action. See **Brandenburg**, 395 U.S. at 447–49. Appellant's invocation of **Brandenburg** misses the mark. In this instance, the speech itself is criminalized as solicitation of a crime, codified at section 902(a) of the crimes code,[14] and therefore is not speech to advocate or even to incite criminal conduct, but rather constitutes the forbidden criminal conduct *itself.* Indeed, "[s]pecific criminal acts are not protected speech even if speech is the means for their commission," as such, the bases

---

[14] 18 Pa.C.S. § 902(a).

8

for charges in this matter, Appellant's requests and directions to R.A. detailing how he wanted her to engage in sexual intercourse with their infant son, were not constitutionally protected speech. **Packingham v. North Carolina**, 582 U.S. 98 (2017) (citing **Brandenburg**, 395 U.S. at 447–49 (1969)).

Appellant also challenges the Court's refusal to suppress the first recorded phone call in this case (Commonwealth Exhibit One, recorded on Feb. 7, 2022), arguing that the Pennsylvania Wire Tap Act's exception—to allow one to record a private conversation where that person is under a reasonable suspicion that the recording will be evidence that the intercepted party is committing, is about to commit, or has committed a crime of violence, which includes solicitation of rape—is inapplicable here. **18 Pa.C.S. § 5704(17)**. Appellant specifically argues that there was no evidence that Appellant was about to commit, had committed, or was committing a crime of violence. This contention has no merit, as R.A. , the witness whose recorded phone conversation is targeted in Appellant's Motion to suppress, was shown to have been under reasonable suspicion that Appellant was committing or about to commit a crime of violence as she had heard Appellant encourage and request her to engage in sexual intercourse with her three-year-old son and to photograph those encounters. R.A. was acting as a private citizen and was not acting on behalf of the Commonwealth or law enforcement. only recorded a subsequent conversation after having an unrecorded conversation with Appellant where Appellant requested R.A. and their infant child engage in sexual intercourse.[15] R.A. was profoundly disturbed by these comments and recorded a later conversation precisely because she felt that Appellant's conduct constituted a

---

[15] N.T. Non-Jury Trial, 6/30/2023, at 7–8.

crime and fully intended to provide the police with the recorded phone call as evidence of such illegal activity.[16] R.A. specifically testified that she had recorded the call because "after [Appellant] said [the comments about his child and R.A. having sexual intercourse], I wanted to go to the State Police."[17] R.A. additionally testified that she did not think Appellant was joking[18] or in any way facetiously requesting that the described sexual contact to occur,[19] as she noted that she was sincerely worried Appellant would have inappropriate sexual contact with their child, or force her to have sexual contact with their child, if she did not alert the police to Appellant's requests.[20]

R.A. recorded the first phone call based on the criminal requests made in the recent, unrecorded conversation, and with the intention of gathering evidence of that crime, as contemplated by the Pennsylvania Wire Tap Act's exception under section 5704(17). **18 Pa.C.S. § 5704(17)**. She recorded the conversation under reasonable suspicion that Appellant had illegally requested and would continue to request that she have sexual contact with their infant son in the future if his comments were not brought to law enforcement.[21] Such recording was authorized by section 5704(17) of the Wiretap Act.

Appellant challenges the Court's decision denying Appellant's Motion to Dismiss for Prosecutorial Misconduct in an order that Appellant finds unclear based on reasons that are "vague or not discernable from the record." This contention has no basis in the law. In fact, the Order of this Court is clear, though perhaps not favorable to Appellant.

---

[16] Id. at 9, 10.
[17] Id. at 9.
[18] Id. at 12, 13.
[19] Id. at 13, 15.
[20] Id. at 15.
[21] Id. at 9.

Hearing was held on Appellant's Motion to Dismiss for Prosecutorial Misconduct on May 16, 2023. Based on testimony given on that date by the Assistant District Attorney against whom Prosecutorial Misconduct allegations were made, Assistant District Attorney Kyle Reuter (hereinafter "Attorney Reuter"), the Court determined that no intentional misconduct or intentional attempt to withhold discovery evidence occurred on the part of the Commonwealth.[22] Because there appeared to be some confusion about the existence of an additional audio recording, which had been the basis of the Prosecutorial Misconduct allegation and had since been turned over to Appellant's counsel prior to the hearing on May 16, 2023, the Court granted a continuance of the Non-Jury Trial so that defense counsel would have ample time to review the new recording in preparation for trial.[23] At the same time, the Court addressed Appellant's counsel regarding the relief requested in the Motion to Dismiss for Prosecutorial Misconduct, inquiring as to whether dismissal of criminal charges was an appropriate remedy under the relevant rule. Appellant's counsel stated plainly that he could not find any caselaw or precedent to support dismissal of criminal charges as a result of a **Brady** violation at the pretrial stage.[24] Rather, as the Court noted, Rule of Criminal Procedure 573, governing Pretrial Discovery, sets forth that the proper remedy for the conduct alleged in Appellant's Motion to Dismiss is not, in fact, dismissal of the criminal charges, instead:

> the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

---

[22] N.T. 5/16/2023, at 26–27; see also Order of Court, 5/16/2023 ("this Court finds that the Commonwealth has not engaged in any prosecutorial misconduct, nor was there any intentional conduct on the part of Assistant District Attorney Reuter to intentionally withhold discovery evidence.)
[23] See id. at 8.
[24] Id. at 10.

11

Pa.R.Crim.P. 573(E). Because the materials that were the impetus for the Motion to Dismiss for Prosecutorial Misconduct were already handed over to Appellant's counsel before the May 16, 2023 hearing, the Court granted a continuance of trial as a practicality, regardless of its finding on the allegations of prosecutorial misconduct. As the Court noted—and Appellant's counsel agreed during the hearing held May 16, 2023—there is no caselaw supporting a dismissal of criminal charges at the pretrial stage, even upon a finding of prosecutorial misconduct and intentional withholding of evidence. See Pa.R.Crim.P. 573(E). Appellant's challenge has no merit.

Lastly, Appellant challenges the sufficiency of the evidence presented by the Commonwealth to show that Appellant commanded, encouraged or requested another person to commit rape and did so with the intent of promoting or facilitating the rape of their infant son, who was three years old[25] and under the age of thirteen at the time. 18 Pa.C.S. § 902(a); 18 Pa.C.S. § 3121(c). Testimony presented at the trial established both the language of encouragement and request, as well as Appellant's intent to promote or facilitate the conduct. As stated above, the Court, as fact finder in the Non-Jury Trial held June 30, 2023, was free to believe and judge the credibility of any witness, and consider that testimony alongside other evidence presented. See e.g. Muniz, 5 A.3d at 348.

R.A. testified about the conversations between she and Appellant and repeated the language used in Appellant's unprompted[26] request for photos of R.A. and their infant son, age three at the time, engaged in sexual intercourse.[27] At trial it was revealed that R.A. had an initial, unrecorded conversation with

---

[25] N.T., Non-Jury Trial, 6/30/2023, at 6.
[26] Id. at 9.
[27] Id. at 7–9.

Appellant, during which Appellant made an initial request for a photo of his son's penis touching R.A.'s vagina.[28] R.A. was stunned by the request and hung up the call to gather her thoughts. She then called Appellant back, in this first recorded phone conversation, to further discuss the details of that request with Appellant and to gather evidence.[29]

In that recorded conversation, which was admitted into evidence for the Court to consider, Appellant can be heard commenting that he was willing to do anything and that "[he] didn't want a picture of [the described sexual contact], [he] wanted to be there."[30] Additional comments from the Appellant himself regarding his desire to have R.A. facilitate the requested sexual intercourse with their son, including instructions as to how R.A. should position her ankles during the desired sexual intercourse as well as other comments showing that Appellant had considered and rationalized his request.[31] Witness additionally testified that she did not feel that Appellant was joking when he described his request to her.[32] She testified that she was fearful for her children and genuinely believed her son to be in danger, as noted in relation to questions about her motivation to record subsequent phone conversations with the Appellant.[33]

The Court was free to value the testimony of R.A. and determine her credibility when evaluating the evidence presented by the Commonwealth. Also presented at trial, as alluded to briefly above, were audio recordings of the phone conversations about which R.A. testified, excluding the first, unrecorded

---

[28] See id.
[29] Id.
[30] Commonwealth Ex. 1 (audio recording).
[31] Comments include "[i]t ain't gonna go far, you know what I mean," and "I know it's fucked up, but he's ours so I'm gonna share" among others. See id.
[32] N.T. Non-Jury Trial, 6/30/2023, at 12, 13, 15.
[33] See id.

conversation. Based on the contents of those recordings as well as P.A.'s testimony regarding her fear and understanding of her conversation with Appellant, it was clear that Appellant had both the requisite intent to encourage the conduct that would constitute rape and communicated that for the purpose of encouraging that rape. Indeed, the Commonwealth need not prove that Appellant commanded that the criminal conduct be done down to the last detail, but rather that the Appellant request or encourage the criminal conduct with the intent that that conduct be done. **Commonwealth v. Sebolka,** 205 A.3d 329, 339 (Pa. Super. 2019). So much was proven at trial based on P.A.'s testimony and the phone conversation recordings.

Therefore, it is respectfully requested that Appellant's conviction and sentence be affirmed.

**BY THE COURT:**

**SHAWN C. WAGNER**
**Judge**

Date: December 27, 2023

14